Chief Judge Smith and may it please the court. My name is Dan Goldberg and I represent Michael Lowry in this appeal. District Court erred in denying the motion to suppress because the police did not have reasonable suspicion to detain Mr. Lowry on the evening in question. The police may of course only conduct a Terry stop when it has reasonable suspicion to do so. There's no dispute here that Mr. Lowry was in fact detained. The sole question is whether there was reasonable suspicion to do so and here there was not and therefore the district court erred. Counselor could there also be an additional issue of the application of attenuation principles? The government does maintain that the attenuation doctrine if there is a constitutional error any error is essentially harmless. Based on Utah Street's three-pronged test though we maintain that the attenuation doctrine does not apply to this case and I can go through those three factors for this court. First factor is the temporal proximity and this one's easy. The government concedes that there's no intervening time factor. Turning a prong to intervening circumstances and we don't believe there's an intervening circumstance either. What the government's argument I think is is that any time they find a warrant for someone's arrest that somehow intervenes but I don't think that's the case here. Here the sole apparent purpose to stop Mr. Lowry was to run that records check so nothing intervened. Counsel what what what does the record show about the facts that support that claim that you that you just made? I mean what is in the record that establishes that the sole purpose of the stop was to run a warrant check? I think that's a great question your honor. What supports it is that here in Streep you have a cohesive theory that attained the person. Here there's no cohesive theory. You have conflicting theories given by officer Hand when he's asked why did you stop this individual he says well maybe it was drugs maybe it was guns maybe it was alcohol maybe he was concealing maybe he was guarding and so all these things are so conflicting that the even the government has to concede in their brief that officer Hand didn't know why he was stopping Mr. Lowry and so I think that's troubling in the sense that by all purposes he was just sitting there waiting for the bus. Does that go to the second prong of Strife or is that the third prong you're discussing? I think it and I see your point I think it does go to third prong the third prong but it also goes to the second prong too I think. Because I think in Strife I mean on the third prong we're looking for flagrant misconduct I think is the language and there's different language in that opinion but I don't think a mistake about reasonable suspicion qualifies as flagrant misconduct so again my question is you know what specifically is there and maybe this is more directed to the third prong which you haven't addressed yet but you know that seems to me to be be a fairly high bar in order to to hit that third issue under Strife. Right and I think your point's well taken it but my our position is it is a fishing expedition here all the officer Hand is fishing for is any street cram. Well wouldn't it have been different if indeed the appellate was only sitting and and still that the the facts here were such that he was he would get up he'd go around behind come back it's rainy it's misty it's not the sort of environment where one would generally leave cover and and draw essentially draw attention to yourself through movement. I think it's a good question your honor I think the problem with the moving around in a bus stop is that it's a cold night and so at best that's ambiguous I think because he could be moving around to stay warm we don't know and I think the inquiry into reasonable suspicion looks for the exact opposite of ambiguity objective and particular as an addition of criminal activity. Now if he was trying to evade police conduct what he would have done is the first time turn around and ran away but he didn't do that he hung around he was staring at officer Hand no doubt about it but anyone would have stared at officer Hand he was screaming at a third party named Tyson Parks why are you here why you're here he was clapping his hands very loudly commanding everyone's attention so I think it would have been more suspicious had Mr. Lowery not looked at officer Hand. So I don't I think there's a constitutional violation and and going to the question of whether or not it's purposeful and flagrant I think the issue is that no reasonable officer would have thought that they had a basis to detain Mr. Lowery under these facts and I think so if we move past that if we'll if we for argument's sake accept that proposition that there really isn't reasonable suspicion at this point then we get back to attenuation concepts and you can proceed with your outline of addressing the Supreme Court's recent decision. Yes and I think so the question becomes they have this warrant and the government's argument is well they have to arrest them because they have the warrant and that's true they do have to arrest them because there's that warrant but that doesn't mean just because you have a warrant that you're cloaked in good faith if you violated someone's constitutional rights and let me give you an example of a case that we cite in our briefs the Lopez Zeninga case you have a warrant issued by a judge to put a GPS tracker on a car and this court held that no reasonable officer could think the probable cause existed for this warrant the specific warrant so the good faith exception did not apply okay and I think this isn't good faith this is the street doesn't turn on good faith it's not the officer's good faith that that it turns on there has to be some remoteness that that separates it or and and they use the term or an intervening circumstance and the intervening circumstance would be locating the warrant and once the officer sees that the person has wanted regardless of how they got to that point a constitutional violation that is of the the should that succeed in keeping evidence out and being an exclusion remedy the supreme court said no so get to the third prong and tell us why the third prong doesn't turn in favor of the the government here I think not and let me and I think your point's a good one let's turn to facts of street because I think they're very important in street you have the police stopping someone after leaving a house and why leaving a house was suspected of drug activity and why do they have that suspicion it's because there's been a tip right and why else do they suspect drugs or activities are going on there they've been there for a week and they see people coming and going coming and going and short short time intervals all commensurate with drug activity the only mistake made by the police I think's a good faith mistake and not um clocking in when that defendant left the house those aren't the facts here here you have by all measures Mr. Lowry simply waiting for a bus and we should be able and anyone that night under the logic espoused by officer hand would have been stopped that night could have been stopped by that night and I understand that they are running saturation patrols at this bus stop to try to prevent crime and the police need to do that sometimes but they need to do so within the boundaries of the fourth amendment and if they don't I think there's a real reason to exclude the evidence here because otherwise you're saying people on bus stops have lesser fourth amendment rights and I think that's a troubling uh precedent to to to look at here so the language the court uses is is that the um the warrant breaks the causal chain and and that that is the the rationale and I don't think it always does that I don't I don't think street announces a per se rule I think Judge Thomas uses the language fishing expedition and if there's a fishing expedition I don't think the word helps him let's say um the police come to my house in the middle of the night without a warrant kick down the door come into my house and they do a records check immediately and find that I have a warrant for my arrest and then they find cocaine on the person well I may have violated law and they have a right to arrest me but I also have a right to challenge the constitutionality of that wouldn't they go to the issue discussed in the street for the flagrancy of the um constitutional violation right and I'm stepping over the line of reasonable suspicion is a little different than kicking the door down in the middle of the night I think what happened here and I see your distinction here but what I think's flagrant and purposeful about here is that the officer comes up to the bus stop he sees Tyson Parks who he knows has right to arrest me he doesn't know anything about my client he immediately says you come here my client complies with that order he said what I do well counsel isn't that reasonable behavior I mean you've got an officer involved with a an escalating situation with this Mr. Park and Mr. Parks you've got a high crime area you've got the appellant in this case who whether or not it rises to the level of reasons reasonable suspicion the officer has suspicion again in a high crime area it could have been just a split second I've got this guy here I've got him there I need to maintain control of the situation now that he may have been wrong about reasonable suspicion but it seems to me you still need to point to how that's flagrant because I think I think there's a reasonable explanation for what happened there whatever way we find on the Terry stop I think this court's case law supports the notion that what happened here was a constitutional violation and let me just cite to the case Jones from this court where I think the police arguably had more basis to stop the defendant you have a defendant who's walking down the street in the Jones case and he's intently looking at police cruiser driving down staring at him he's also clutching something in his hoodie pocket of a sweatshirt and there's all this testimony at the suppression hearing how clutching something means something bad's going to happen something violent the 8th circuit says sorry just clutching something is not sufficient to show um that that you have reasonable suspicion because we all clutch from time to time and and then they also the government also argue in that case hey you know the police officer was right something bad did happen there and he was violating the law the 8th circuit said yeah well the police might have been right but you also violated this individual's fourth amendment rights and here that's the exact same analysis I think applies here and I think you have more egregious conduct because I don't think that it's reasonable well I think it's purposeful when you are saying you come here I'm detaining you you no longer have liberty but I don't know why and I'm going to and even on hindsight vision at the suppression hearing I'm going to offer conflicting theories that have no basis in the record I mean he testified officer hand did that he didn't see him conceal or hide anything not drugs not guns not weapons if you look at the video which is exhibit three you see that the bus stop is clear so there's this big rationale while he's hiding and behind the thing well it's kind of hard to hide but behind the translucent bus shelter so I think there is a basis to invoke the fourth amendment and I think there is a basis to exclude this evidence if there's no other questions I'd like to reserve the remainder of time. May it please the court Ben Hurst for the United States I'd like to start with the reasonable suspicion issue here and then I'll move to the attenuation issue following that unless there are questions from the court you can move in a different direction when I start with the reasonable suspicion issue I'd like to highlight a couple of things factors in consideration of reasonable suspicion that I think are important for the court to keep in mind in evaluating the circumstances and in the district court's decision here to deny the suppression motion first reasonable suspicion is not preponderance the evidence it's not a probable cause it's a low bar that is got to be more than a hunch yes your honor and in some ways this seems a lot like a hunch uh yes your honor I can see that we agree that that a mere hunch is not going to do it but I think here what's required is articulable facts that the officer can articulate but he doesn't have to be able to say exactly what crime he suspects is going on it's enough to say that there's criminal activity. Counsel if you read the district court's analysis on this issue it basically comes down to that he walked away twice while keeping his eyes on the officer and this was in the context of a heated exchange that was going on that that just seems to fall short of even a low bar um yes your honor your honor but I think that the um I don't think it falls short of the low bar I think that the uh articulation from the officer here and it has to be weighed I think in comparison to the intrusion which here in this case was minimal come sit here and sit inside this bus shelter 25 yards away but I do think that the um the district court covers the facts um but puts them in context in fact the district court says this you have to consider not just that he walked away twice while he was watching the officer and those are factors that this court um has held maybe they're not sufficient on their own um but that they're factors that an officer can consider when it comes to reasonable suspicion the the opportunity or taking the opportunity to evade the officer bringing yourself to a position where the officer can't see what you're doing so obstructing the officer's vision and then in the context of this case um which has already been discussed today that it was cold it was January 28th in Kansas City it was windy it was misting and they and the uh defendant left the bus shelter the relative comfort of the bus shelter to go outside not once but two different times and it the the I think the course of events is also important here the police cruiser pulls up and that's the first time that officer hand sees the defendant leave the shelter and go behind the sort of uh while he's watching the police cruiser officer hand gets out he begins his interaction with Mr. Parks and the defendant comes back around into the bus shelter but then when the officer looks and makes eye contact with the defendant he leaves the shelter again and goes behind it and this is the point at which the officer who testified in fact that he had seen people doing similar behavior who are later found to have committed some kind of crime is concerned primarily with the the fact that there's some kind of contraband that may be involved maybe it's alcohol maybe it's drugs and narcotics and maybe it's some kind of weapon and that the officer knows and the officer knows and he sounds like a good hunch then but it still sounds kind of iffy in terms of of the strength of the suspicion of illegality yes your honor but that's not everything that the officer had the other reason the officer was there has been referred to here is that he knew and had been that this was a place where high crime had gone on not just high crime sort of uh inchoate high crimes but in fact specific kinds of crimes the officer testified had gone on at this place so there were violent crime uh fights and disturbances issues with alcohol in fact that's why he the interaction with Mr. Parks was an alcohol issue and in fact testified at the hearing that the undercover or a loss prevention officer who was an who was an off-duty police officer had observed narcotics transactions going on at the bus stop and these are all things that the officer knew that fed into his decision just to ask Mr. Mr. Lowry to come over and talk to him and and the one additional thing about that is and it fits both I think maybe less than the reasonable suspicion but I think it goes to the attenuation piece is that the officer was by himself he had now he had a another sort of probationary or temporary officer with him in a car who couldn't help out but he was by himself there were other people around and he was trying to handle a situation with Mr. Parks that was escalating and that was creating his attention or dividing his attention what the officer testifies that normally he would go directly to the pedestrian and do the pedestrian stop and sort of just talk to him right I mean generally this would have led to a consensual encounter I think I think that's correct that's what you're saying so and I do think that goes to the attenuation issue but I don't think it solves your problem on reasonable suspicion I mean the standard is what the standard is and I think I just heard you say that generally the officer would not have believed or would not have conducted a Terry stop but in this case he did and that's the part that I'm having trouble with I think yes your honor and I can see that I can see that issue and I I do agree that it goes to in fact one one factor in this case that makes it actually a little stronger case for the application of the attenuation doctrine than strafe because the court in that case said well how is the officer negligent in this case it doesn't rise to misconduct it's not flagrant but what kind of what did he do well it was mere negligence not to do a walk and talk not to approach a pedestrian here we actually didn't don't have I think that kind of negligence that they had in that case and it does go in that point to a greater reason from the government's perspective to apply the attenuation doctrine but and I'll also I just one or two more things to it's not I mean the officers is not required to rule out all the innocent explanations certainly there are innocent explanations here but that's not the standard the standard is taking all the totality of the circumstances together not the divide and conquer analysis where you look at each piece and say well that doesn't meet the standard that doesn't meet the standard that doesn't meet the standard but taking everything together did the officer get does he have an and in this case the government thinks that that standard that standard is met and in the fact that you don't have to rule out innocent explanations is is sort of baked into reasonable suspicion analysis reasonable suspicion Terry stops the fourth amendment acknowledges that sometimes you're going to lawfully stop someone who and you're not going to find evidence of crime or criminality it's not going to develop out of that so I think I think with that I'll move to a fuller discussion of the attenuation doctrine unless the court has additional questions about reasonable suspicion with respect to the attenuation doctrine I think that the is really kind of on all fours with this case I don't think because I think that the it's true the temporal prospect here that the intervention of the knowledge of the independent warrant is is as close or no closer anyway than it was in his briefcase but that was a case where the court said yes this council is in favor of suppression but we're not going to suppress the evidence because the other two factors are stronger so I think in considering the other two factors was there intervening circumstance yes it the intervening circumstance here in the intervening circumstance and street are both very similar in that case there was a he approached and stopped the the person who at that point didn't have reasonable suspicion to stop and he said got his id ran his id and determined that he had an active warrant the active warrant had nothing to that's what made it independent and what made it an intervening cause we have that same kind of thing here where there the warrant that was intervening is not any warrant that the officer even knew was was was there and didn't have anything to do with the interaction that was going on at the bus stop so I think the cause is intervening my colleague says that the factual difference in streif considering the the fact that it was a drug case of the fact that there was a stronger facts maybe supporting the analysis or the investigation that case I think actually gets I think that that's not a piece of the analysis when attenuation comes up it is coming up because we know that there wasn't enough suspicion or probable cause to justify what was done before that's why we're talking about attenuation oh that's not the government's position here but for the sake of argument so the fact that that case was involved a house where there was maybe drug transactions going on and this involved a bus stop I don't think it's just I don't think it's a relevant point to the analysis the point is when he found the when he found and stopped the defendant and saw that the defendant had an active warrant that was not related to what was going on before he had an obligation to arrest the the defendant and it was a search incident to that reveal the evidence of the crime that we're discussing here so that covers the intervening circumstances prong the last prong the flagrancy of the purposefulness of the misconduct the government doesn't think that there was evidence in the record to to that officer hand wasn't stopped Mr. Lowry solely for the purpose of determining who he was so that he could run a check in his computer if the officer made a mistake here I think it was a reasonable one the government's position is in fact that he didn't make one but in any event it was a close call if he if he missed the reasonable suspicion because there wasn't quite enough there it was no more than negligence from the government's perspective and I think that brings us squarely within the context of the what the court and Sreef held was not flagrant misconduct I don't think that there was anything like a fishing expedition Sreef does talk about the possibility that there might be systemic or recurring police misconduct I don't think that there's any evidence in the record that would suggest that there's some suggestion in the reply brief that maybe the purposefulness analysis goes to the act that the officer did I think I don't think that's what Sreef is talking about every arrest is purposeful in that sense or most everyone is going to be the officer is going to be purposefully arresting the person like they mean to stop them they mean to connect with Harry they mean to connect the arrest I think the purposefulness when it when Sreef is talking about purposefulness is a question of the purposefulness as to the violation is the violation so obvious is the violation is the officer going in there with the purpose knowing that he's going to violate the fourth amendment to do so I don't think that's what we have here I think officer hands the circumstances are not such that it would suggest that there was some kind of purposefulness to the violation of the fourth amendment if there was one I do think it's important to recognize that flagrancy of misconduct is not just the absence of reasonable suspicion or probable cause that's what the court says there and I think if that were true then there wouldn't be a need for an attenuation doctrine because every case that involves that where the court where the officer has reasonable suspicion or probable cause there wouldn't be a need to do the attenuation analysis I'll make I'm gonna discuss Jones briefly unless there's another attenuation question my colleague mentioned Jones I just want to highlight that I don't think Jones is that close to what we have here and Jones there was no yes the defendant watched the officers but there was no flight there was no evasion there was no attempt to move away from the officers or get up away from the officers you well there was there wasn't that here he didn't leave he could have left he went behind the bus stop he came back went behind it again he came back he never left when he was called to come he obeyed the officer's direction yes your honor um with with the caveat or the qualification the officer did testify that his view was obstructed of the defendant when the defendant went behind the shelter counsel there was a an altercation that the officer was involved in talking about innocent explanations if I was waiting at a bus stop for example I'm watching an incident going on that could turn violent there's there's a easy innocent explanation I think for stepping away while keeping your eyes on the situation but not wanting to get too close yes your honor I think and I think that would be we'd have a different case here if all that had happened was that the defendant had watched what was going on I think that would be a different case than the one we have but the one we have is one where the officer the defendant who is already 25 yards away makes the additional step to go behind and get away from the vision of the officer and does so twice in circumstances where doing so was that assumes that the conduct was done to avoid the vision of the officer yes at effect of the officer not being able to see it but that has to assume that that the purpose for going behind was to avoid the officer's vision there could be any number of reasons that one would have made that action without attempting or without having the purpose of being unseen by an officer who's engaged with someone else at the moment and then choosing to be seen again and then choosing to be seen again yes your honor I think I'll handle both questions that as to your question your honor I don't think that we that the officer was required to get reasonable suspicion to explain to to deal with all innocent explanations for the behavior yes there are innocent explanations but he doesn't have to we consider the totality of the circumstances not just that one factor in the officer it reasonable explanations are he doesn't have to rule them all out and with respect to yours question your honor I think that what the explanation I think might be is that when he left the first time then the officer engaged with officer with Mr. Parks and then he came back around that's my understanding of what happened and then when the officer looked at him again that's when he went back behind again I see my time has expired if there are no other questions I'll um thank you Mr. Hearst thank you your honor Mr. Goldberg your rebuttal I think this case does turn on the attenuation doctrine and I just disagree with my colleague that Streep is on all fours here counsel the district court didn't as I recall address attenuation if we determine it should be addressed is it appropriate for us to address it or would a remand be appropriate for the district court to take a look at that issue well I do think that typically this uh court is a court of first or not of review not first so I think a remand would be appropriate I do think based on these facts though um my thought is that the attenuation doctrine ought not apply but if the court found it helpful I think the remand should occur I think the problem here though is that it goes back to the notion that um the facts obviously you've got Mr. Lowry there looking at Tyson Parks the officer feels threatened by Tyson Parks that doesn't give him a basis to detain everyone at the bus stop um and you see this rationale by the the um officer hand on a stand he says well he was wearing bulky clothing it was a cold night you know so every one of his rationales is defeated and let's say we were leaving this courtroom this courthouse and everyone's being stopped for records checks every single one of us does that intervene is that an intervening circumstance when they find warrants but that's a that's a fishing expedition right I mean that I mean that's a little different that's very different than what we have in this case well judge I just respectfully disagree because when you're at a bus stop and you're not doing anything wrong besides walking around I don't think that's a basis to stop someone especially when the officer's justification is that he's fishing for street crime I mean he could have said well I thought he was engaged in child porn and wire fraud and um having a gun all those theories become so conflicting that I think it becomes evidence that it is in fact efficient unless there's other questions we respectfully submit this matter be reversed and remanded the motion expressed be granted thank you Mr. Goldberg thank you too Mr. Hurst thank you for the argument you provided to the court I think it will be helpful as we try to resolve the issues presented and we'll take your case under advisement may be excused